COLEMAN, JUSTICE, FOR THE COURT:
 

 ¶ 1. Kendall Martin was convicted of possession of more than one kilogram of marijuana with intent to distribute. Martin was sentenced as a subsequent drug offender and as a nonviolent habitual offender to sixty years in the custody of the Mississippi Department of Corrections without the possibility of parole. On appeal, Martin argues that the trial court erred by admitting the evidence because the initial traffic stop was not based on probable cause or reasonable suspicion and the stop was unreasonably extended in violation of Martin's Fourth Amendment rights. Martin also argues that the State failed to prove that he was a habitual offender under Mississippi Code Section 99-19-81, and that the trial court erred in sentencing him as such.
 

 FACTUAL BACKGROUND
 

 ¶ 2. Around 4:55 p.m. on March 27, 2013, Officer Jason Johns, a deputy for the Rankin County Sheriff's Department, was traveling on I-20 eastbound when he observed Kendall Martin cross over the right lane fog line. Martin was traveling in a Chevrolet SUV in front of Officer Johns. At that point, Officer Johns, according to his standard procedure, pulled beside Martin to see if he was wearing a seatbelt and how many occupants were in the vehicle. Officer Johns then dropped back behind Martin, observed him hit the line or "g[e]t real close to it" again, and then initiated the traffic stop. The second encroachment upon the fog line was recorded on Officer Johns's car camera.
 

 ¶ 3. Officer Johns approached the passenger-side window. When he leaned in to ask for Martin's driver's license and proof of insurance, he could smell an overwhelming odor of air fresheners and a faint odor of marijuana coming from the car. He testified that, in his experience, people who transport drugs use air fresheners to cover the odor. Officer Johns worked as a sergeant and K-9 handler for the Flowood Police Department. He also was a sworn deputy for the Rankin County Sheriff's Department on the drug task force. He testified that he has had hundreds of classes in narcotics and criminal interdiction, and he had "been doing drug interdiction work pretty much [his] entire career."
 

 ¶ 4. Officer Johns asked Martin to step out of the vehicle while he radioed in Martin's driver's license information. Martin told Officer Johns that he was driving back to Tuscaloosa, Alabama, from Austin, Texas, where he had been visiting his cousin for a few days. Martin also handed Officer Johns a personal insurance card for a rental vehicle, which Johns considered suspicious. When the dispatcher radioed back that Martin's driver's license was valid, Officer Johns informed Martin that he had smelled marijuana in the vehicle. He then asked Martin if he could search the car, to which Martin replied, "it don't matter." Before searching the vehicle, Officer Johns asked Martin if he or his cousin had smoked in the vehicle, if anyone else besides Martin had used the vehicle, and if there were any guns in the vehicle. Martin informed Officer Johns that he had driven to Austin in one rental vehicle and had traded it in the night before in Austin to drive back in the bigger SUV.
 

 ¶ 5. The smell of marijuana became much stronger when Officer Johns opened the passenger's side door. When he opened the back hatch, the odor of marijuana "nearly blew [him] down." Officer Johns found a black duffel bag that felt like it contained bricks. He testified that he could tell just by feeling the bag that there were illegal narcotics in the bag. Martin was then placed under arrest and read his
 
 Miranda
 

 [1]
 
 rights. When Officer Johns opened the duffel bag, he found 9.9 pounds of marijuana.
 

 ¶ 6. Martin filed a motion to suppress evidence of the drugs found during the search because the search and seizure violated his Fourth Amendment rights. Martin argued that Officer Johns did not have reasonable suspicion to stop him, and that the stop was in reality motivated by racial profiling. He also argued that Officer Johns illegally extended the stop to search the car after the investigation of the traffic violation had concluded. At the suppression hearing, Officer Johns testified that he pulled Martin over for careless driving after observing him twice cross or bump the fog line, which he believed to constitute a violation of Mississippi Code Section 63-3-1213. The trial court found that there
 was sufficient probable cause for the stop and there was no unreasonable delay in the search, and, therefore, denied the motion to suppress. After a jury trial, Martin was found guilty of possession of more than one kilogram of marijuana with intent to distribute. Because Martin had four prior felony drug convictions, the trial court sentenced him as a habitual offender and subsequent drug offender to sixty years without the possibility of parole in the custody of the Mississippi Department of Corrections.
 

 ANALYSIS
 

 ¶ 7. "Whether probable cause or reasonable suspicion exists is subject to a de novo review. But the Court limits the de novo review of the trial court's determination to 'historical facts reviewed under the substantial evidence and clearly erroneous standards.' "
 
 Eaddy v. State
 
 ,
 
 63 So.3d 1209
 
 , 1212 (Miss. 2011) (quoting
 
 Dies v. State,
 

 926 So.2d 910
 
 , 917 (Miss. 2006) ).
 

 I. The trial court did not err in denying Martin's motion to suppress the evidence.
 

 A. Officer Johns had sufficient probable cause to stop Martin for careless driving.
 

 ¶ 8. Martin argues that there was no probable cause or reasonable suspicion for the traffic stop, and that the supposed traffic violation was pretextual. Because courts have seemed to confuse the standards of "probable cause" and "reasonable suspicion" and neither party distinguished which standard is proper, we will first attempt to sort out the distinctions between the two.
 

 ¶ 9. An officer may make a brief, investigatory stop of a vehicle if the officer has reasonable suspicion to believe that the occupants of the vehicle have been, are currently, or are about to be involved in criminal activity.
 
 See
 

 United States v. Hensley
 
 ,
 
 469 U.S. 221
 
 , 227,
 
 105 S.Ct. 675
 
 , 679-80,
 
 83 L.Ed.2d 604
 
 (1985) ;
 
 Dies v. State
 
 ,
 
 926 So.2d 910
 
 , 918 (¶ 22) (Miss. 2006) ;
 
 Floyd v. City of Crystal Springs
 
 ,
 
 749 So.2d 110
 
 , 114 (¶ 16) (Miss. 1999). The suspicion must be "grounded in specific and articulable facts ...."
 
 Eaddy v. State
 
 ,
 
 63 So.3d 1209
 
 , 1213 (Miss. 2011) (citing
 
 Walker v. State
 
 ,
 
 881 So.2d 820
 
 , 826 (Miss. 2004) ;
 
 Terry v. Ohio
 
 ,
 
 392 U.S. 1
 
 ,
 
 88 S.Ct. 1868
 
 ,
 
 20 L.Ed.2d 889
 
 (1968) ;
 
 Haddox v. State
 
 ,
 
 636 So.2d 1229
 
 , 1235 (Miss. 1994) ).
 

 ¶ 10. The Court has explained reasonable suspicion as follows:
 

 Grounds for reasonable suspicion to make an investigatory stop generally come from two sources: either the officers' "personal observation" or an informant's tip.
 
 Williamson v. State
 
 ,
 
 876 So.2d 353
 
 , 355 (Miss. 2004) (citation omitted).
 
 See also
 

 Florida v. J.L.,
 

 529 U.S. 266
 
 , 270,
 
 120 S.Ct. 1375
 
 ,
 
 146 L.Ed.2d 254
 
 (2000). The officer's personal observation includes information from other law-enforcement personnel.
 
 See
 

 Dies,
 

 926 So.2d at 920
 
 ("[R]easonable suspicion ... can be transferred from officer to officer. ..."). And an informant's tip may provide reasonable suspicion if accompanied by some indication of reliability; for example, reliability may be shown from the officer's independent investigation of the informant's information.
 
 Florida v. J.L.
 
 ,
 
 529 U.S. at 270
 
 ,
 
 120 S.Ct. 1375
 
 .
 
 See, e.g.,
 

 McClellan v. State,
 

 34 So.3d 548
 
 , 552 (Miss. 2010) (valid investigatory stop where officers further investigated "vague" information received from informant before making the stop);
 
 Burchfield v. State,
 

 892 So.2d 191
 
 , 194-95 (Miss. 2004) (reasonable suspicion for investigatory stop supported by store clerk's tip that described defendants who had purchased precursors and by officer's personal observation of
 defendants' purchases in vehicle described by clerk);
 
 Williamson,
 

 876 So.2d at 356
 
 (reasonable suspicion for investigatory stop supported by tip from unnamed informant that described, in relevant part, the defendant and his vehicle and tag number, and by officer's subsequent verification of number).
 

 But the scope of an investigatory stop is limited.
 
 Floyd v. State
 
 ,
 
 500 So.2d 989
 
 , 992 (Miss. 1986). The scope of a search or seizure must relate to the initial circumstances that called for police action.
 
 Haddox
 
 ,
 
 636 So.2d at 1234
 
 . Thus, when police detention exceeds the scope of the stop, the stop becomes a "seizure," and the State must show probable cause.
 
 Floyd
 
 ,
 
 500 So.2d at 992
 
 (citation omitted).
 

 Eaddy
 
 ,
 
 63 So.3d at 1213-14
 
 .
 

 ¶ 11. Thus, reasonable suspicion is based on something less than the personal observation of a violation of law. Reasonable suspicion is the standard for a stop or search based on suspicious activity that does not yet amount to criminal activity, but which compels an officer to believe that criminal activity has happened, is happening, or is about to happen.
 

 ¶ 12. Probable cause, on the other hand, is a higher standard and requires a higher level of suspicion than reasonable suspicion.
 
 United States v. Sokolow
 
 ,
 
 490 U.S. 1
 
 , 8,
 
 109 S.Ct. 1581
 
 , 1585,
 
 104 L.Ed.2d 1
 
 (1989) (citing
 
 United States v. Montoya de Hernandez
 
 ,
 
 473 U.S. 531
 
 , 541, 544,
 
 105 S.Ct. 3304
 
 , 3310, 3312,
 
 87 L.Ed.2d 381
 
 (1985) ) ("[T]he level of suspicion required for a
 
 Terry
 
 stop is obviously less demanding than that for probable cause."). "The foremost method of enforcing traffic and vehicle safety regulations ... is acting upon observed violations."
 
 Whren v. United States
 
 ,
 
 517 U.S. 806
 
 , 817,
 
 116 S.Ct. 1769
 
 , 1776,
 
 135 L.Ed.2d 89
 
 (1996) (quoting
 
 Delaware v. Prouse
 
 ,
 
 440 U.S. 648
 
 , 659,
 
 99 S.Ct. 1391
 
 , 1399,
 
 59 L.Ed.2d 660
 
 (1979) ). "Therefore, probable cause to make a traffic stop exists,
 
 inter alia,
 
 when a defendant commits a traffic violation and a law-enforcement officer observes the violation."
 
 United States v. Rosales-Giron
 
 ,
 
 592 Fed.Appx. 246
 
 , 251 (5th Cir. 2014) (citing
 
 United States v. Khanalizadeh,
 

 493 F.3d 479
 
 , 482 (5th Cir. 2007) ).
 

 ¶ 13. The Court has held that the test for determining probable cause is the totality of the circumstances.
 
 Harrison
 
 , 800 So.2d at 1138 (¶ 18) (citing
 
 Haddox,
 

 636 So.2d at
 
 1235 ). The Court has defined probable cause as:
 

 a practical, nontechnical concept, based upon the conventional consideration of every day life on which reasonable prudent men, not legal technicians act. It arises when the facts and circumstances with an officer's knowledge, or of which he has reasonably trustworthy information, are sufficient in themselves to justify a man of average caution in the belief that a crime has been committed and that a particular individual committed it.
 

 Id.
 

 (quoting
 
 Conway v. State
 
 ,
 
 397 So.2d 1095
 
 , 1098 (Miss. 1980) ).
 

 ¶ 14. In
 
 Whren v. United States
 
 , the United States Supreme Court stated that, generally, "the decision to stop an automobile is reasonable where the police have
 
 probable cause
 
 to believe that a traffic violation has occurred" regardless of the officer's subjective intent.
 
 Harrison
 
 , 800 So.2d at 1138 (emphasis added) (quoting
 
 Whren
 
 ,
 
 517 U.S. at 810
 
 ,
 
 116 S.Ct. at
 
 1772 ).
 

 The traffic stop may have been pretextual. But under
 
 Whren v. United States,
 
 a traffic stop, even if pretextual, does not violate the Fourth Amendment if the officer making the stop has "probable cause to believe that a traffic violation has occurred."
 
 This is an objective test
 

 based on the facts known to the officer at the time of the stop, not on the motivations of the officer in making the stop.
 
 On the other hand, if it is clear that what the police observed did not constitute a violation of the cited traffic law, there is no "objective basis" for the stop, and the stop is illegal.
 

 Moore v. State
 
 ,
 
 986 So.2d 928
 
 , 933 (Miss. 2008) (emphasis in original) (internal citations omitted) (quoting
 
 Walker v. State
 
 ,
 
 913 So.2d 198
 
 , 225-26 (Miss. 2005) ).
 

 ¶ 15. A traffic stop can even be reasonable in the event of a mistake of law. If the probable cause is based on a mistake of law, as long as the "probable cause is based on good faith and a reasonable basis, then it is valid."
 
 Harrison
 
 , 800 So.2d at 1138-39 (citing
 
 United States v. Wallace
 
 ,
 
 213 F.3d 1216
 
 (9th Cir. 2000) ).
 

 ¶ 16. Therefore, when a police officer personally observes a driver commit what he reasonably believes is a traffic violation, he then has probable cause to stop the vehicle. The Mississippi careless-driving statute provides that "[a]ny person who drives any vehicle in a careless or imprudent manner, without due regard for the width, grade, curves, corner, traffic and use of the streets and highways and all other attendant circumstances is guilty of careless driving."
 
 Miss. Code Ann. § 63-3-1213
 
 (Rev. 2013).
 

 ¶ 17. The Court has never considered whether crossing the fog line, as in the instant case, is a violation of the careless-driving statute. Other courts that have considered the issue have determined that crossing or "bumping" the fog line gives an officer probable cause or reasonable suspicion to believe that the defendant has violated the Mississippi careless-driving statute.
 
 See
 

 United States v. Diaz
 
 ,
 
 802 F.3d 234
 
 (2d Cir. 2015) ;
 
 United States v. Rosales-Giron
 
 ,
 
 592 Fed.Appx. 246
 
 (5th Cir. 2014) (per curiam);
 
 Nolan v. State
 
 ,
 
 182 So.3d 484
 
 (Miss. Ct. App. 2016) ;
 
 Williams v. State
 
 ,
 
 126 So.3d 85
 
 (Miss. Ct. App. 2013) ;
 
 Dominick v. State
 
 ,
 
 108 So.3d 452
 
 (Miss. Ct. App. 2012) ;
 
 Ellis v. State
 
 ,
 
 77 So.3d 1119
 
 (Miss. Ct. App. 2011) ;
 
 Martin v. State
 
 ,
 
 43 So.3d 533
 
 (Miss. Ct. App. 2010),
 
 Shelton v. State
 
 ,
 
 45 So.3d 1203
 
 (Miss. Ct. App. 2010) ;
 
 Tran v. State
 
 ,
 
 963 So.2d 1
 
 (Miss. Ct. App. 2006) ;
 
 Doolie v. State
 
 ,
 
 856 So.2d 669
 
 (Miss. Ct. App. 2003) ;
 
 Blake v. State
 
 ,
 
 825 So.2d 707
 
 (Miss. Ct. App. 2002) ;
 
 see also
 

 United States v. Escalante
 
 ,
 
 239 F.3d 678
 
 (5th Cir. 2001) (holding that Section 63-3-1213 is not unconstitutionally vague and officer had probable cause to stop defendant after observing defendant twice cross the divider lines of the road);
 
 Henderson v. State
 
 ,
 
 878 So.2d 246
 
 (Miss. Ct. App. 2004) (finding that the officer's observation of a vehicle twice approach a curb constituted probable cause to stop the vehicle);
 
 Leuer v. City of Flowood
 
 ,
 
 744 So.2d 266
 
 (Miss. 1999) (holding that Section 63-3-1213 is not unconstitutionally vague and officer had probable cause to stop defendant after observing defendant drive onto the shoulder of the road and go into the middle of the roadway).
 

 ¶ 18. Martin argues that all of the above-listed cases can be distinguished because the violations therein were coupled with other factors or were more severe than those before the Court now. In
 
 Williams
 
 and
 
 Tran
 
 , which we find persuasive, the Court of Appeals found that there was probable cause to stop a vehicle that had crossed over the fog line just once.
 
 See
 

 Williams
 
 ,
 
 126 So.3d 85
 
 ;
 
 Tran
 
 ,
 
 963 So.2d 1
 
 . In
 
 Dominick
 
 , the Court of Appeals found that there was probable cause to stop a vehicle that had " 'bumped' or 'simply rode' the fog line prior to changing lanes."
 
 Dominick
 
 ,
 
 108 So.3d at 456
 
 . In the video of that stop, it was not clear if the defendant had touched the fog line, but the video also
 did not contradict the officer's testimony.
 

 Id.
 

 Similarly, in
 
 Henderson
 
 , the defendant twice had approached and "nearly hit" a curb.
 
 Henderson
 
 ,
 
 878 So.2d at 247
 
 . Still, the Court of Appeals found that there was probable cause to believe that the defendant was driving without "regard for the width and use of the streets."
 

 Id.
 

 ;
 
 see also
 

 Miss. Code Ann. § 63-3-1213
 
 .
 

 ¶ 19. Also, in
 
 United States v. Rosales-Giron
 
 , the Fifth Circuit found that there was probable cause to stop a vehicle under Mississippi's careless-driving statute for just one "hit" or "bump" of the fog line.
 
 Rosales-Giron
 
 ,
 
 592 Fed.Appx. 246
 
 . There, the sound of a vehicle running over the rumble strips alerted the trooper.
 

 Id.
 

 at 247
 
 . He then began following the vehicle.
 

 Id.
 

 While driving side-by-side with the vehicle, he observed the vehicle move onto the fog line.
 

 Id.
 

 When he dropped back behind the vehicle and turned on his blue lights, the video recorded the van "driv[ing] on ('hit[ting]' or 'bump[ing]') the fog line."
 

 Id.
 

 at 248
 
 . The district court suppressed the evidence from the stop, finding that there was no probable cause for the stop, and the trooper lacked credibility.
 

 Id.
 

 at 248-49
 
 . On an interlocutory appeal, the Fifth Circuit looked at only the third recorded "bump" incident.
 

 Id.
 

 at 250
 
 . In reversing the district court, the Fifth Circuit concluded from the broad language of Section 63-3-1213 and the cases from the Mississippi Court of Appeals "that a traffic stop for careless driving is justified in Mississippi when a law enforcement officer observes an automobile hit the fog line."
 

 Id.
 

 at 251
 
 . The Court found that an officer's observation of just one hit of the fog line constitutes sufficient probable cause that a violation of Mississippi's careless-driving statute has occurred.
 

 ¶ 20. Here we have two incidences. First, we have the testimony of Officer Johns, upon which the trial court relied, that the officer had observed Martin's vehicle cross the fog line once before the camera began recording. The second incident is seen in the video of the stop. Martin's vehicle comes close to the fog line, if not contacting it. Officer Johns testified that he believed it had touched the fog line. As in
 
 Dominick
 
 , the video does not contradict Officer Johns's testimony.
 

 ¶ 21. Martin argues that there is no evidence that Officer Johns had probable cause to believe that a traffic violation had occurred, and that the video evidence contradicts Officer Johns's testimony. The Court discerns no instance in which the video contradicts Officer Johns's testimony. Martin's argument also seems to discount the fact that the officer testified to observing Martin's vehicle cross the fog line before the video began recording. The trial judge found the officer's testimony to be credible, and the Court holds that it was not clear error for him to do so.
 

 ¶ 22. Martin also argues that Officer Johns admitted that he had not decided to stop Martin until he pulled beside him and could see that Martin was a black male driving a car with out-of-state license plate, which is evidence that the stop was based on racial profiling. However, that is not what Officer Johns stated or what should be inferred from his statement. Officer Johns testified that he had not definitively made the decision to stop the vehicle until he dropped back behind the vehicle and observed it hit the fog line again, but he already had initiated his standard stop procedure after the first observed cross of the fog line. The video of the traffic stop corroborates Officer Johns's testimony.
 

 ¶ 23. Martin further argues that the fact that Officer Johns told Martin that he was not going to issue a traffic citation for careless driving is indicative of racial profiling. After Martin already had consented
 to a search of the vehicle, Officer Johns told Martin that he was not going to write him a ticket for crossing the fog line. He then informed Martin that he was going to check the vehicle, and, "if everything checks out, you'll be on your way." " 'There is no requirement that an officer issue a citation for the predicate traffic violation to have a valid stop or search.' "
 
 Walker v. State
 
 ,
 
 913 So.2d 198
 
 , 226 (Miss. 2005) (quoting
 
 McCollins v. State
 
 ,
 
 798 So.2d 624
 
 , 628 (Miss. Ct. App. 2001) ) (finding that Walker's claim that failure to issue a speeding ticket showed pretext was without merit).
 

 ¶ 24. Because Officer Johns observed Martin's vehicle cross the fog line once, and then again approach or "bump" the fog line, and the video evidence, while unclear, does not directly contradict Officer Johns's testimony, the Court holds that there is sufficient evidence that Officer Johns had probable cause to believe that Martin had driven "in a careless or imprudent manner, without due regard for the width ... and use of the streets and highways" in violation of Section 63-3-1213.
 

 B. Officer Johns had probable cause to search the vehicle as soon as he smelled marijuana, and thus, the stop was not unconstitutionally extended.
 

 ¶ 25. Martin next argues that, even if Officer Johns had probable cause to stop Martin, the detention became illegal after the investigation of the reason for the initial stop was over. When an officer observes a traffic violation, he has probable cause to detain that person long enough to issue a traffic citation.
 
 Floyd v. City of Crystal Springs
 
 ,
 
 749 So.2d 110
 
 , 122 (¶ 46) (Miss. 1999) ("If the police had themselves observed Floyd violating traffic ordinances, they could have stopped him and seized him long enough to process a citation."). "If the officer develops reasonable suspicion of additional criminal activity during his investigation of the circumstances that originally caused the stop, he may further detain its occupants for a reasonable time while appropriately attempting to dispel this reasonable suspicion."
 
 United States v. Pack
 
 ,
 
 612 F.3d 341
 
 , 350 (5th Cir. 2010) (citing
 
 United States v. Brigham
 
 ,
 
 382 F.3d 500
 
 , 506 (5th Cir. 2004) ).
 

 ¶ 26. In the present case, Officer Johns testified that he smelled an overwhelming odor of air fresheners and an odor of marijuana as soon as he leaned in the window to retrieve Martin's license and insurance card. He testified that in his experience, that meant drugs were present. The video of the stop does not contradict Officer Johns's testimony. In the video, Officer Johns told Martin that "[he] smelled a hint in there" as soon as he was informed that Martin's license was valid.
 

 ¶ 27. The Court has held that probable cause may come from any of an officer's five senses.
 
 Dies v. State
 
 ,
 
 926 So.2d 910
 
 , 918 (¶ 24) (Miss. 2006) (citing
 
 Miller v. State
 
 ,
 
 373 So.2d 1004
 
 , 1007 (Miss. 1979) ). "If an officer clearly smells contraband, such as marijuana, that smell can give rise to the probable cause necessary to search a vehicle and its passengers."
 

 Id.
 

 (citing
 
 Boches v. State
 
 ,
 
 506 So.2d 254
 
 , 264 (Miss. 1987) ). Therefore, as soon as Officer Johns smelled the marijuana at the beginning of the stop, he had probable cause to search the vehicle. The probable cause did not dissipate merely because Officer Johns waited until he had obtained the results of Martin's criminal-database and driver's license checks before bringing it to Martin's attention.
 
 See
 

 Townsend v. State
 
 ,
 
 681 So.2d 497
 
 (Miss. 1996) (holding that the smell of marijuana discovered during a search incident to arrest gave the officer and officers who arrived on the scene six
 or seven minutes later probable cause to search the vehicle and bags therein).
 

 ¶ 28. Furthermore, Martin consented to the search. Officer Johns asked Martin, "Do you mind if I check it real quick before I let you go?" Martin replied, "It don't matter." Martin did not argue below, and does not argue here that the consent was not valid. Further, the fact that Officer Johns stated "before I let you go" in his request for consent, does not negate the probable cause that already was present for the search.
 

 ¶ 29. After giving consent, Officer Johns asked a few more questions to determine if anyone else had been in the vehicle, when the vehicle had been rented, and how long Martin had been driving. Again, Officer Johns already had probable cause and consent to search the car. The Court holds that there was no unreasonable delay in the commencement of the search based on probable cause, and, moreover, Martin consented to the search.
 

 II. Martin was properly sentenced as a habitual offender under Mississippi Code Section 99-19-81
 
 .
 

 ¶ 30. The State entered into evidence certified judgments of conviction for four separate felonies. Martin was arrested on December 31, 2003, and again on July 13, 2004, for unlawful possession of a controlled substance. He was convicted of both crimes on January 20, 2006, and sentenced to three years each in the custody of the Alabama Department of Corrections, to run concurrently. He was arrested again on February 15, 2006, and convicted of unlawful delivery of a controlled substance on September 6, 2006. Martin was sentenced to eight years in custody for that offense. Finally, he was arrested on June 6, 2006, for trafficking cocaine. He pleaded guilty to unlawful possession of a controlled substance on September 6, 2006, and was sentenced to fifteen years in custody. That sentence was ordered to be served concurrently with Martin's other three sentences.
 

 ¶ 31. Martin argues that he was sentenced incorrectly as a habitual offender under Section 99-19-81 because his sentences for four prior felonies were served concurrently and not consecutively. In
 
 Jackson v. State
 
 , the Court held that "[t]he appellant contends that concurrent sentences are not 'separate terms' required by the statute for sentencing as a recidivist. There is no merit to Martin's contention. The language of the statute requires sentencing to separate terms, specifically omitting the requirement that they must be served separately, or that they must be served at all."
 
 Jackson v. State
 
 ,
 
 518 So.2d 1219
 
 , 1219 (Miss. 1988). Martin's argument is without merit.
 

 CONCLUSION
 

 ¶ 32. The trial court properly allowed the evidence obtained during the search of Martin's vehicle. The officer had probable cause to stop the vehicle based on a reasonable belief that a traffic violation had occurred. Then, as soon as the officer smelled the odor of marijuana, he had probable cause and consent to search the vehicle. The officer did not prolong the stop improperly. Further, the trial court properly sentenced Martin as a habitual offender because the State presented evidence that Martin previously had served concurrent sentences for four prior drug offenses. Concurrent sentences for different crimes are separate sentences under the habitual offender statute. Martin's conviction and sentence are affirmed.
 

 ¶ 33.
 
 AFFIRMED.
 

 RANDOLPH, P.J., MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR. KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., AND KING, J. ISHEE, J., NOT PARTICIPATING.
 

 Miranda v. Arizona
 
 ,
 
 384 U.S. 436
 
 ,
 
 86 S.Ct. 1602
 
 ,
 
 16 L.Ed.2d 694
 
 (1966).