## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2017-KA-01072-COA

**CARL MAURICE WALLACE A/K/A CARL WALLACE**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                        **APPELLEE**

DATE OF JUDGMENT:              07/10/2017
TRIAL JUDGE:                   HON. LAMAR PICKARD
COURT FROM WHICH APPEALED:     JEFFERSON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        CYNTHIA ANN STEWART
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                               BY: LAURA HOGAN TEDDER
DISTRICT ATTORNEY:             ALEXANDER C. MARTIN
NATURE OF THE CASE:            CRIMINAL - FELONY
DISPOSITION:                   AFFIRMED - 04/23/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE WILSON, P.J., GREENLEE AND McCARTY, JJ.

### McCARTY, J., FOR THE COURT:

¶1.     After a call from a confidential informant led to his arrest, Carl Wallace was convicted of possession with the intent to distribute a variety of controlled substances and for possession of a firearm by a felon. His one claim on appeal is that the trial court should have suppressed the evidence presented against him because the initial traffic stop was not based on reasonable suspicion or probable cause. Because it was, the evidence was properly admitted, and we affirm.

### FACTUAL BACKGROUND

¶2.     This case began when Bobby Bailey, a deputy for the Jefferson County Sheriff's

Department, received a direct phone call from a confidential informant. The informant told Deputy Bailey that there was an SUV parked at a gas station in Fayette, and it reeked so badly that it had a "loud odor" of what the caller believed to be marijuana. The informant was not sure of the exact make or model of the SUV but told the deputy that it was either a white Tahoe or a white Yukon and that there were three people inside.

¶3.    Deputy Bailey immediately acted on the tip; he called four other deputies for backup and drove to the gas station. The deputy later testified he knew the informant personally and had found the person to be reliable, which led him to believe the tip was worth checking out. In his role as a drug-enforcement officer and investigator for Jefferson County, Deputy Bailey testified that he "get[s] th[e]se tips all the time and . . . act[s] on whatever [he] get[s] because there's a lot of dope in this county."

¶4.    The deputy left the Sheriff's Department on Highway 33 and turned onto Main Street in the direction of the gas station. After turning onto Main Street, the deputy noticed a white SUV coming in his direction. The window of the SUV was down, and as he passed, the deputy clearly saw that the driver was not wearing a seatbelt.

¶5.    The deputy radioed the other law enforcement officers, who were en route. He then turned his car around, followed the white SUV for 150 yards, and initiated a traffic stop. The deputy testified that only about 10 minutes had passed from the time he received the informant's tip until the time he pulled over the white SUV.

¶6.    Like the confidential informant before him, Deputy Bailey immediately noticed the smell of marijuana coming from the SUV. He testified that "the scent was so immense . . .

2

that there was no doubt that it was marijuana." As he approached, the deputy asked the driver, Carl Wallace, "Man, what is that scent coming from your vehicle?" Wallace responded, "Oh, you're talking about my personal stash?" Wallace then lifted the lid of the center console to display two small bags of what appeared to be marijuana. The deputy then told Wallace that he was going to search the SUV.

¶7. The search was productive. While the "personal stash" that Wallace voluntarily showed the law enforcement officer was likely less than 30 grams of marijuana, there was more marijuana in the white SUV—plus .38 grams of cocaine, 19.97 grams of a synthetic cannabinoid called NM2201M, 15 dosage units of methamphetamine, two digital scales, and a drug cleaning kit. A .22 Taurus pistol with matching bullets was hidden in a dash console within reach of the driver.

¶8. Wallace and his two passengers were placed under arrest and taken back to the Jefferson County Sheriff's Department. At trial, Deputy Bailey testified that Wallace took responsibility for the contents of the SUV and was subsequently booked.

¶9. Before trial, Wallace moved to suppress the drug evidence found in the SUV during the search, arguing that the search and seizure violated his Fourth Amendment rights. He argued that Deputy Bailey's traffic stop was not based on reasonable suspicion but instead was pretextual in nature, alleging it was based on an "anonymous" tip.

¶10. A suppression hearing was conducted. Although both the defense and the State used the term "anonymous tip," Deputy Bailey testified the informant was not anonymous at all. Instead, he had worked with this person before and had found the person to be reliable.

Because the deputy knew the informant, the trial court even admonished the parties from using the word "anonymous," although they continued to do so. Importantly, Deputy Bailey testified that he observed Wallace driving without a seatbelt, which is an obvious violation of state law. The trial court found that there was sufficient probable cause for the stop and denied the motion to suppress.

¶11. After a jury trial, Wallace was found guilty of possession with the intent to distribute the controlled substances seized during the traffic stop. He was also convicted of possession of a firearm by a felon. Because Wallace had prior felony convictions, the trial court sentenced him as a habitual offender to serve a combined total of twenty years for the drug-related charges. For the firearm possession, Wallace was sentenced to ten years. The sentences were ordered to run consecutively without eligibility for parole.

**DISCUSSION**

¶12. On appeal, Wallace raises only one issue, arguing that the controlled substances and firearm seized during the traffic stop should have been excluded from the trial. There is a mixed standard of review when we examine whether evidence could have been suppressed due to a claim of unlawful search and seizure.[1] We review de novo whether there was reasonable suspicion or probable cause for the search and seizure. *Ornelas v. United States*, 517 U.S. 690, 699 (1996). But our review of the trial court's findings on these issues are more deferential and restricted to the "historical facts reviewed under the substantial

---

[1] Appellate counsel only addressed the issue of the stop. We note that the issues are not fully presented pursuant to Rule 28(a) of the Mississippi Rules of Appellate Procedure. Notwithstanding the procedural bar, a thorough review of the record shows that there was probable cause for the search because the drugs were in plain view.

evidence and clearly erroneous standards." *Dies v. State*, 926 So. 2d 910, 917 (¶20) (Miss. 2006) (citing *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 113 (¶11) (Miss. 1999)). On review, this Court is "not limited to evidence presented to the trial judge at the suppression hearing; this Court may look to the entire record to determine whether the trial judge's findings are supported by substantial evidence." *Galloway v. State*, 122 So. 3d 614, 669 (¶181) (Miss. 2013) (citing *Holland v. State*, 587 So. 2d 848, 855 (Miss. 1991)).

¶13.   Under Article 3, Section 23 of the Mississippi Constitution, and the Fourth Amendment to the United States Constitution, people have the right to privacy and protection from unreasonable searches and seizures. This protection includes "seizures of the person and brief investigatory stops including those of a vehicle." *Dies*, 926 So. 2d at 918 (¶21) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).

¶14.   An investigatory traffic stop is only permissible when an officer has "reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a felony . . . or as long as the officers have some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *Floyd*, 749 So. 2d at 114 (¶16) (citations omitted). The Mississippi Supreme Court has held that reasonable suspicion for an investigatory traffic stop may be obtained through "an officer's personal observation or an informant's tip if it bears indicia of reliability." *Id.* at 118 (¶30) (citing *Adams v. Williams*, 407 U.S. 143, 147 (1972)). Reliability has no bright-line rule or set factors. *United States v. Sierra-Hernandez*, 581 F.2d 760, 763 (9th Cir. 1978). In *Floyd*, our Supreme Court examined the following indicia of reliability using a

"totality of the circumstances" approach: (1) whether the informant is known by law enforcement; (2) whether the informant has provided reliable information in the past or is paid by law enforcement to provide information; (3) the extent of detail and specificity provided in the tip, to include the crime committed, how the informant came to be aware, the location, and/or the individuals involved; and (4) whether the officer has further investigated the tip for corroboration. *Floyd*, 749 So. 2d at 118-19 (¶¶30-33).

¶15.    In this appeal, Wallace strenuously argued that the tip law enforcement received did not constitute reasonable suspicion.  As at trial, his main argument on appeal is that the informant was "anonymous," meaning there was not sufficient indicia of reliability to send law enforcement out seeking a white SUV.  Yet although the informant was unknown to Wallace and the trial court, Deputy Bailey personally knew the informant.  The deputy stated that the informant was listed in his report as "anonymous" because he wanted to keep the person's identity confidential.  Deputy Bailey testified repeatedly that he knew the informant and had found the person to be reliable in the past.

¶16.    Importantly, the relationship must have been reliable enough because the record shows that the informant called Deputy Bailey directly rather than 911 or a general line.  At the suppression hearing, the trial court noted that the tip was not "anonymous."  The trial court even went so far as to advise that "the record is clear that Officer Bailey knew who the caller was."  There is no merit to any suggestion that the tip was unreliable simply because the identity of the informant was not known.

¶17.    Wallace further argues that the tip was unreliable because it lacked sufficient detail.

Looking at the record, the information provided by the informant was neither "vague" nor "imprecise." *See id.* at 119 (¶33). The informant's tip had roughly four pieces of information: there were three men, sitting in a white SUV (either a Tahoe or a Yukon), at the local gas station, and the SUV reeked of marijuana. There was then a "who," a "what," and a "where," conjoined with a belief that at least a misdemeanor offense was being committed. This information is sufficiently reliable.

¶18. During oral argument, counsel for Wallace noted that the relatively bland description of the car—a white SUV—could have included dozens or more cars depending on the locale. Counsel also stressed that law enforcement did not provide a time line and had not found Wallace at the gas station; they found him driving down Main Street. In contrast, Deputy Bailey testified that from the time he received the tip until the time he pulled over Wallace's SUV, only about ten minutes had elapsed. Although the deputy did not find the white SUV at the gas station, he literally passed it on the way there and noted it contained three men. Once the stop had been initiated, the stench of marijuana further corroborated the informant's information.

¶19. Based on the totality of the circumstances, we agree with the trial court's ruling. The tip received was reliable and from a known source. Further, there was nothing in the record to indicate that the deputy should have had cause "to doubt the reliability or good faith of the informant" or the quality or reliability of the information provided. *Id.* There is no merit to the argument that the tip was unreliable.

¶20. Further, Deputy Bailey had an independent basis for the traffic stop beyond the

7

informant's tip. Our precedent holds that a pretextual traffic stop "does not violate the Fourth Amendment if the officer making the stop has probable cause to believe that a traffic violation has occurred." *Moore v. State*, 986 So. 2d 928, 933 (¶14) (Miss. 2008) (internal quotation mark omitted). Probable cause for a traffic stop is evaluated objectively, using a "totality of the circumstances" approach regarding the officer's knowledge of the facts at the time of the stop. *Id.* at 933-34 (¶¶14, 19). Deputy Bailey testified that while driving to the gas station he spotted a white SUV and noticed while passing it that the driver was not wearing a seatbelt. The Legislature has decreed that "[w]hen a passenger motor vehicle is operated in forward motion on a public road, street or highway within this state, every operator . . . shall wear a properly fastened safety seat belt system . . . ." Miss. Code Ann. § 63-2-1 (Rev. 2013).[2] When Wallace drove the white SUV down Main Street without wearing his seatbelt, he committed a traffic violation, which provided Deputy Bailey with probable cause to stop his car. "When an officer observes a traffic violation, he has probable cause to detain that person long enough to issue a traffic citation." *Martin v. State*, 240 So. 3d 1047, 1054 (¶25) (Miss. 2017) (citing *Floyd*, 749 So. 2d at 122 (¶46)).

¶21. Wallace argues that a seatbelt violation is not enough to warrant probable cause to stop his car given the "totality of the circumstances." Yet law enforcement should not "simply shrug their shoulders and allow a crime or a criminal escape to occur." *Dies*, 926 So. 2d at 919 (¶24). Regardless of probable cause, or the nature of the offense

---

[2] The language of Mississippi Code Annotated section 63-2-1 was amended in 2017 for stylistic purposes. These changes were procedural and have no effect on the substance of the statute. Miss. Code Ann. § 63-2-1 (Supp. 2018).

suspected—misdemeanor or felony—the Fourth Amendment "encourage[s] the police to pursue their reasonable suspicions." *Id.*; *see Wilson v. State*, 935 So. 2d 945, 950 (¶17) (Miss. 2006). Wallace's failure to wear his seatbelt was sufficient for the traffic stop. Nor does it matter that the deputy did not ultimately issue a traffic citation to Wallace for failure to wear a seatbelt, as "there is no requirement that an officer issue a citation for the predicate traffic violation to have a valid stop or search." *Martin*, 240 So. 3d at 1054 (¶23) (internal quotation marks omitted) (quoting *Walker v. State*, 913 So. 2d 198, 226 (¶93) (Miss. 2005)).

¶22. In many ways this case echoes *Martin*, which the Mississippi Supreme Court decided. In that case, Martin was arrested and convicted of possession with intent to distribute when a traffic stop revealed more than one kilogram of marijuana in his car. *Id.* at 1049-50 (¶¶5-6). While driving on the interstate, an officer noticed an SUV tap the right-lane fog line twice. *Id.* at 1049 (¶2). Based on this observation, the officer pulled Martin over for careless driving. *Id.* at (¶6). When the officer approached the car and leaned in to ask for Martin's driver's license and proof of insurance, the officer smelled the faint scent of marijuana and an overwhelming smell of air fresheners. *Id.* at (¶3). A search revealed a large quantity of marijuana. *Id.* at (¶5). Similar to this case, Martin argued on appeal that the traffic stop lacked reasonable suspicion and probable cause and that the stop was unreasonably extended. *Id.* at 1048 (¶1). The Supreme Court upheld the trial court's findings, concluding that a "reasonable belief that a traffic violation had occurred" provided the officer with probable cause for the search. *Id.* at 1055 (¶32). Probable cause was also provided "as soon as the officer smelled the odor of marijuana." *Id.* In accordance with this precedent, the search in

9

this case was likewise proper.

¶23.    As in *Martin*, upon approaching the SUV, Deputy Bailey testified that he smelled an odor "so immense . . . that there was no doubt it was marijuana." This smell then gave rise to a second sufficient occurrence of probable cause, as "probable cause may come from any of an officer's five senses." *Id.* at 1054 (¶27) (citing *Dies*, 926 So. 2d at 918 (¶24)). "If an officer clearly smells contraband, such as marijuana, that smell can give rise to the probable cause necessary to search a vehicle and its passengers." *Id.* (quoting *Dies*, 926 So. 2d at 918 (¶24)).

¶24.    Even prior to the deputy's search of the white SUV, Wallace had visibly committed a minimum of four misdemeanor offenses. He failed to use his seatbelt. Miss. Code Ann. § 63-2-7 (Rev. 2013).[3] He was likely operating a car while under influence of drugs. Miss. Code Ann. § 63-11-30 (Rev. 2013).[4] He volunteered to Deputy Bailey by virtue of his "personal stash" that he had committed at least simple possession of marijuana. Miss. Code Ann. § 41-29-139(c) (Rev. 2013). When opening the center console he also displayed digital scales, violating state law regarding drug paraphernalia. Miss. Code Ann. § 41-29-139(d). Deputy Bailey had sufficient reason and probable cause to stop Wallace's car when he observed him violating the seatbelt law, and these additional instances of probable cause

---

[3] The language of Miss. Code Ann. § 63-2-7 was amended in 2017 for stylistic purposes. These changes were procedural and have no substantive effect on the statute as it applies to the present case. Miss. Code Ann. § 63-2-7 (Supp. 2018).

[4] The language of Miss. Code Ann. § 63-11-30 was amended in 2017 for stylistic purposes. These changes were procedural and have no substantive effect on the statute as it applies to the present case. Miss. Code Ann. § 63-11-30 (Supp. 2018).

became apparent when Officer Bailey followed up on his reasonable suspicions and stopped Wallace's SUV.

¶25.  Wallace also argues that the stop was pretextual because the deputy answered affirmatively when he was asked during the suppression hearing if he "pulled this individual over strictly based on that phone call" and did not perform any further investigation beyond reacting to the informant's call.  Yet this one statement during the hearing cannot be reviewed in isolation, and indeed under our standard of review, we can look to the whole record.  As set out above, the deputy knew the informant and found that person reliable.  In the same suppression hearing, the deputy testified that he followed Wallace for 150 yards before turning on his blue lights.  He did not see any traffic violations during that span, but he "realized that when he was driving by," the driver was not wearing his seatbelt.  As set out above, this is sufficient for purposes of the original stop.

## CONCLUSION

¶26.  The trial court properly denied the motion to suppress evidence obtained during the investigatory stop and subsequent search of Wallace's SUV.  The deputy had reasonable suspicion to stop Wallace's car when he received a reliable tip from a known informant indicating criminal activity.  Further, when the deputy observed Wallace violating a traffic law, he had probable cause to stop the car.  Wallace's conviction and sentence are therefore affirmed.

¶27.  **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE AND C. WILSON, JJ.,**

11

**CONCUR.**