ISHEE, J.,
for the Court:
¶ 1. John Edward McDonald was indicted in the First Judicial District of Hinds County Circuit .Court for possession of more than one kilogram of marijuana with intent to distribute. McDonald was pulled over in the parking lot of his apartment complex based on an informant’s tip. He was then questioned, and he consented to a search of his vehicle. After a trial, McDonald was convicted and sentenced as a subsequent drug offender to sixty years in the custody of the Mississippi Department of Corrections (MDOC). McDonald now appeals arguing: (1) the statements elicited during the traffic stop should be suppressed, and his consent to search his vehicle was not voluntary; (2) his post-Miranda[1] silence was improperly introduced at trial; (8) his pri- or drug offenses were improperly introduced at trial; and (4) the indictment was not properly amended to include his status as a subsequent drug offender. Finding no reversible error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. On September 23, 2009, Hinds County Sheriffs Deputy Mick Brown and Jackson Police Officer Roy Dickerson conducted a routine traffic stop. During the stop, they discovered the driver was in possession of marijuana, and arrested the unnamed individual. Thereafter, the unnamed individual told the police officers that he knew where they could locate ten pounds of marijuana. According to the unnamed individual, the marijuana would be in a black bag in the trunk of a dark-colored rental car parked in the back of a car wash on Beasley Road in Jackson, Mississippi. He further stated a black male would be driving the vehicle. The officers then relayed the information to Mississippi Bureau of Narcotics (MBN) Agent Casey Dennis.
¶ 3. After receiving the information, Agent Dennis and his partner proceeded to the car wash on Beasley Road. When they arrived, they observed a dark-colored vehicle being driven by a black male exiting the car wash. They then saw a paper “U-Save Car Rental” tag on the back of the car. The agents followed the vehicle down Beasley Road and the vehicle pulled into an apartment complex. As the vehicle pulled into a parking space, the agents initiated a traffic stop based on an improperly displayed tag.
¶ 4. After parking the vehicle, McDonald exited the car, locked the doors, and handed the keys to a woman who had approached him. Agent Dennis then approached McDonald, asked for his driver’s license, and told him he had been stopped due to an improperly displayed tag. Agent Dennis asked if he could search McDonald’s vehicle. McDonald replied: “I know my rights, get a warrant.” Agent Dennis called dispatch to determine whether McDonald had any outstanding warrants. He also checked the vehicle’s vehicle identification number, and called for a K-9 unit.
¶ 5. Agent Dennis pulled McDonald to the side to discuss the informant’s tip. According to Agent Dennis, McDonald was not under arrest at this time and was not handcuffed or restrained from leaving in any way. Agent Dennis also stated that McDonald’s car was not blocked from leaving. Accordingly, McDonald was not given any Miranda warning. However, McDonald disputed this version of the events. He testified that he was, in fact, handcuffed and prevented from leaving. He further asserted that he asked for an attorney during the questioning; however, *107 the questioning continued, and an attorney was not provided.
¶ 6. Agent Dennis asked McDonald about the allegations that had been made about him. McDonald admitted he was previously in possession of ten pounds of marijuana but that he had given it to his brother. He also admitted that he had a “smoke sack” in the car and was willing to provide information regarding forty pounds of marijuana in exchange for leniency. Agent Dennis reportedly told McDonald that if the amount of marijuana was less than an ounce, he would not be arrested. McDonald denied telling Agent Dennis any of this information.
¶ 7. Agent Dennis and McDonald walked over to McDonald’s vehicle. McDonald motioned to the woman holding the keys. The woman brought the keys to McDonald, and he then handed them to Agent Dennis. Agent Dennis opened the trunk and found a black gym bag. When they opened the bag, they discovered numerous ziplock bags containing marijuana, digital scales, and a box of ziplock bags. In addition to these items, Agent Dennis found two hotel receipts from June 14, 2009. McDonald was then arrested. When he was taken into custody, they discovered $2,818 on his person.
¶ 8. McDonald denied that the drugs were his. He claimed that the first time he saw the drugs was when Agent Dennis opened the trunk. While he acknowledged that the receipts found in the bag were his, he stated that he did not know how they got in the bag. McDonald further stated that the money found on his person was to pay the individual painting his car.
¶ 9. On November 3, 2009, McDonald was indicted by a Hinds County grand jury. He was charged as a subsequent drug offender for possession of marijuana in an amount of more than one kilogram with the intent to distribute. The indictment further charged that the offense occurred within 1,500 feet of a church building in violation of Mississippi Code Annotated section 41-29-142 (Rev.2009). After a trial on the matter, McDonald was convicted and sentenced as a subsequent drug offender to sixty years in the custody of the MDOC. McDonald now appeals.
DISCUSSION
I. Suppression of Evidence and Admissions
A. Unreasonable Detention
¶ 10. McDonald does not challenge the initial traffic stop. He acknowledges that stopping the vehicle for an improperly displayed tag was appropriate. However, McDonald contends that once the officer determined that the tag had been applied for and no other issues were present, the justification for the stop ended. Therefore, any further withholding constituted an unreasonable detention.
¶ 11. Routine traffic stops are noncustodial investigatory stops, and we treat them as a Terry[2] stop. United States v. Brigham, 382 F.3d 500, 506 (5th Cir.2004) (citation omitted). When considering the legality of a Terry stop, “[appellate courts] first examine whether the officer’s action was justified at its inception, and then inquire whether the officer’s subsequent actions were reasonably related in scope to the circumstances that justified the stop.” Id. The “detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges.” Id. at 507. Reasonable suspicion for an *108 investigatory traffic stop “may be based on an officer’s personal observation or an informant’s tip if it bears an indicia of reliability.” Floyd v. City of Crystal Springs, 749 So.2d 110, 118 (¶ 30) (Miss.1999) (citation omitted).
¶ 12. Here, the justification for the teaffic stop was twofold. As McDonald admits, the officer was justified in stopping the car for an improperly displayed tag. However, the traffic stop was also appropriate based on the informant’s tip. The tip was sufficiently reliable to justify the traffic stop. The informant stated there would be a dark-colored rental vehicle being driven by a black male at a car wash on Beasley Road. The- officers then observed a dark-colored rental vehicle being driven by McDonald exiting a car wash on Beasley Road. There was sufficient corroboration between the informant’s tip and the officer’s own observations to justify the traffic stop based on the tip.
¶ 13. McDonald is correct that the justification for the stop based on the improperly displayed tag ended once the officer determined that the tag had been applied for and that no other issues were present. However, at that point, the purpose of the stop based on the informant’s tip had not been effectuated. Accordingly, we find there was no unreasonable detention. This issue is without merit.
B. Consent to Search
¶ 14. Next, McDonald argues the consent to search his vehicle was coerced and involuntary, thus making the evidence discovered during the search inadmissable as fruit of the poisonous tree. McDonald asserts that because the State did not prove that the officer gave him his driver’s license back before obtaining consent to search, the consent to search was invalid.
¶ 15. When the validity of the search is based on consent, “the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority.” Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). McDonald cites United States v. Chavez-Villarreal, 3 F.3d 124, 128 (5th Cir.1993), as support for his proposition that the consent was not voluntary. In that case, the United States Court of Appeals for the Fifth Circuit found that the consent to search was coerced because the officer obtained consent while holding the defendant’s alien-registration card. Id.
¶ 16. At trial, there was no testimony that Agent Dennis kept McDonald’s driver’s license. Instead, there was simply a lack of testimony regarding whether the driver’s license was handed back. This is insufficient to find that McDonald’s consent was coerced. Furthermore, McDonald initially declined to permit the officers to search his vehicle, stating: “I know my rights, get a warrant.” He made this statement after he had handed Agent Dennis his driver’s license. Therefore, he was not coerced based on the officer’s alleged possession of his driver’s license. However, after speaking with Agent Dennis regarding the informant’s tip, McDonald attempted to gain favorable treatment by admitting to the presence of drugs in his vehicle. At this point, McDonald changed his mind, and permitted the search of his vehicle. Therefore, it is clear that McDonald voluntarily consented to the search of his vehicle, and no coercion was involved. This issue is without merit.
C. Admissions Made During the Traffic Stop
¶ 17. Finally, McDonald argues that he was in custody during the traffic stop; *109 therefore, he should have been given a Miranda warning before any questioning commenced. Accordingly, he asserts that any admissions he made during the “interrogation” should have been excluded from trial.
¶ 18. Miranda warnings are required when “there has been such a restriction on a person’s freedom as to render him ‘in custody.’ ” Oregon v. Mathiason, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). We consider the issue of whether a reasonable person would feel that he or she was in custody based on the totality of the circumstances. Hunt v. State, 687 So.2d 1154, 1160 (Miss.1996). The factors we consider are:
(a) the place of interrogation; (b) the time of interrogation; (c) the people present; (d) the amount of force or physical restraint used by the officers; (e) the length and form of the questions; (f) whether the defendant comes to the authorities voluntarily; and (g) what the defendant is told about the situation.
Id. Furthermore, “a person has been ‘seized’ within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.” United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).
¶ 19. McDonald claims he was in custody due to the large number of police officers at the scene and that the police cars prevented him from leaving. Agent Dennis stated there was a clear path of egress. McDonald also cites the fact that Agent Dennis had him walk thirty to fifty feet away from his vehicle to talk as support for his claim that he was in custody. McDonald further asserts that he was handcuffed at the scene; however, Agent Dennis stated that McDonald was not handcuffed.
¶ 20. We find that McDonald was not in custody and, thus, no Miranda warning was required. Agent Dennis stated that there was a clear path of egress and that McDonald was not handcuffed. There was also no physical force or verbal intimidation used. McDonald voluntarily walked approximately thirty to fifty feet away to talk with Agent Dennis. He was free to refuse to do so. Furthermore, McDonald was pulled over in the parking lot of his apartment complex. He could have left and gone to his apartment at any time. We find, based on the totality of the circumstances, McDonald was not in custody during the questioning; therefore, no Miranda warning was required. This issue is without merit.
II. Post -Miranda Silence
¶ 21. McDonald argues that the testimony discussing his post-arrest, post-Miranda silence was improperly introduced at trial, thus violating his constitutional right to remain silent and constituting reversible error. The challenged testimony came during the State’s direct examination of Agent Dennis. The State asked Agent Dennis: “When [ (McDonald) ] signed the Miranda warning, did he sign the Miranda [-]rights waiver that was on the warning?” Agent Dennis replied: “No, sir, he did not sign his waiver.” McDonald objected, but his objection was overruled.
¶ 22. It is well-established law that “[i]t is never proper to comment on an accused’s post-Miranda silence, and normally it will be regarded by [appellate courts] as reversible error.” Gossett v. State, 660 So.2d 1285, 1291 (Miss.1995). However, an error may nonetheless be deemed harmless if the overwhelming weight of the evidence points to the defendant’s guilt. Id. “[E]ven errors involving a violation of an accused’s constitutional *110 rights may be deemed harmless beyond a reasonable doubt where the weight of the evidence against the accused is overwhelming.” Emery v. State, 869 So.2d 405, 409 (¶ 22) (Miss.2004) (citing Riddley v. State, 777 So.2d 31, 35 (¶ 11) (Miss.2000)).
¶23. The above questioning is the only time McDonald’s post-Miranda silence was discussed. Furthermore, there was overwhelming weight of McDonald’s guilt. Prior to being in custody and therefore being Mirandized, McDonald admitted to having a “smoke sack” and to having three pounds of marijuana. The police found a black gym back containing marijuana, ziplock bags, and digital scales in the trunk of McDonald’s car. The black bag also contained two hotel receipts that McDonald admitted were his and, therefore, connected him to the black bag. Finally, McDonald had $2,818 in currency in his possession from which the jury could infer illegal activity. While we find the trial court erred by permitting the question posed by the State to Agent Dennis, we find the error was harmless. Because of the overwhelming amount of evidence against McDonald, there was no reversible error committed.
III. Introduction of Prior Drug Offenses
¶24. The State was allowed to introduce McDonald’s three drug convictions at trial, which included distribution of cocaine, possession of marijuana, and possession of cocaine. McDonald objected to the introduction of the convictions, but the trial court permitted their introduction. In allowing the convictions into evidence, the trial court stated:
This [c]ourt is going to find that under the particular nature of the charge which is pending against [McDonald], which is possession of a controlled substance with the intent to distribute the same, that the involvement of [McDonald] in the drug industry is relevant and pertinent to proof of the allegations set out in the indictment, that the admissibility of [McDonald’s] record would be more probative than prejudicial.
McDonald argues this violates Mississippi Rules of Evidence 403 and 404(b). He asserts there was sufficient evidence to establish intent without introducing the convictions; thus, the convictions were not more probative than prejudicial. The State argues the convictions were used to establish proof of his intent to distribute. The State further argues that the juiy was instructed that it could not use the evidence of McDonald’s convictions when determining whether he was guilty or not guilty of the instant charge.
¶ 25. Mississippi Rule of Evidence 403 states: “Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” Mississippi Rule of Evidence 404(b) states: “Evidence of other crimes ... is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.”
¶ 26. “It is settled in Mississippi jurisprudence that under Mississippi Rule of Evidence 404(b) evidence of prior sales is admissible to show or prove intent to distribute.” Hosey v. State, 77 So.3d 507, 516 (¶ 34) (Miss.Ct.App.2011) (citation omitted). “Evidence of prior involvement in the drug trade is admissible to prove intent to distribute.” Holland v. State, *111 656 So.2d 1192, 1196 (Miss.1995) (citations omitted). “[Ejvidence of prior acts to show intent to distribute [is] admissible if it passe[s] the [Rule] 403 filter and [is] accompanied by an instruction limiting its use to show intent.” Holland, 656 So.2d at 1196.
¶ 27. McDonald relies heavily on Holland, 656 So.2d 1192, to contrast that case with the one at hand. He asserts that there is more evidence to establish intent in this ease than in Holland. He argues that, unlike in Holland, the evidence was not more probative than prejudicial. In Holland, the defendant (1) was observed having an exchange with another individual, (2) was in an area associated with drug use and was found carrying $223.75 in cash and a pager, and (3) provided a written statement admitting he had sold drugs in the past three weeks. Id. at 1195. Because the evidence alone was insufficient to establish intent, the written statement concerning his past drug activity was introduced under Rules 404(b) and 403 to show intent. Holland, 656 So.2d at 1196. Ultimately, the intent-to-distribute conviction was reversed for insufficient evidence. Id. at 1196-97.
¶ 28. Mississippi law clearly supports the introduction of McDonald’s intent-to-sell conviction. The intent-to-sell conviction is admissible under Rule 404(b) to establish intent with respect to the present charge. However, the introduction of McDonald’s possession convictions does not serve any purpose for which they would be admissible under Rule 404(b). Therefore, the trial court should not have permitted the introduction of the possession convictions. Nonetheless, the error is harmless. McDonald’s argument that “[w]ith the amount of drugs involved, the digital scales, and the baggies, there was no need for the [S]tate to present evidence of McDonald’s prior convictions[,]” supports the argument that even if the convictions had been excluded, “the same result would have been reached[.]” Accordingly, we find no reversible error.
IV. Status as a Second or Subsequent Drug Offender
¶ 29. In his final issue on appeal, McDonald argues his sentence as a second or subsequent drug offender was illegal because an order amending the indictment was never entered on the record. He further asserts his attorney was ineffective for failing to object to the lack of an order amending the indictment and for failing to preserve the issue for appeal.
¶ 30. Mississippi Code Annotated section 99-17-15 (Rev.2007) provides for amendments to the indictment during the course of the trial. It states, in its entirety:
The order of the court for amendment of the indictment, record[,] or proceedings provided in section 99-17-13 shall be entered on the minutes, and shall specify precisely the amendment, and shall be a part of the record of said case, and shall have the same effect as if the indictment or other proceeding were actually changed to conform to the amendment; and wherever necessary or proper for the guidance of the jury, or otherwise, the clerk shall attach to the indictment a copy of the order for amendment.
Miss.Code Ann. § 99-17-15. “It is the law that an amendment to an indictment must be by order of the court which must precisely specify the amendment!,] and the order must be spread on the minutes.” Thomas v. State, 167 Miss. 504, 505, 142 So. 507, 507 (1932) (citations omitted). Thus, a valid order must be entered in the record to amend the indictment.
¶31. Here, when granting the amendment to the indictment, the trial *112 court stated: “The [c]ourt has allowed the State’s motion to amend the indictment.” No order was ever entered on the record. Accordingly, the trial court did not conform to the requirement of Mississippi Code Annotated section 99-17-15, and the indictment was not properly amended. However, although the indictment was not properly amended, the issue must have also been preserved for appeal.
¶ 82. “The State is required to make sure that ... an order [amending the indictment] appears in the record[,] and the defense is required to object to the absence of such [an] order if it wishes to preserve this point for appeal.” Reed v. State, 506 So.2d 277, 279 (Miss.1987) (citing Sturgis v. State, 379 So.2d 534 (Miss.1980)). In Doby v. State, 532 So.2d 584, 587 (Miss.1988), the trial court granted the State’s motion to amend the indictment but failed to enter an order on the minutes. The Mississippi Supreme Court, quoting Dunaway v. State, 398 So.2d 658, 659 (Miss.1981), stated: “[A] defendant must specifically bring the absence of an order on the minutes of the court allowing the amendment to the attention of the trial court, or the error will be waived and ... may not be raised for the first time on appeal.” Doby, 532 So.2d at 587. Because the defendant failed to object to the absence of an order on the minutes either during trial or in the motion for a new trial, the supreme court found he had waived the right to present the issue on appeal. Id. at 588.
¶ 33. Here, neither the State nor the defense counsel sought to have the order entered on the record. The defense counsel did not object'when the trial judge initially granted the amendment, nor did the defense counsel raise the issue in the motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. Because the defense counsel did not object to the lack of an order amending the indictment, the issue is waived on appeal.
¶ 34. Although the issue is procedurally barred, McDonald makes a second argument, that his defense counsel was ineffective for failing to object to the amendment and the resulting failure to preserve the issue for appeal. To establish an ineffective-assistance-of-counsel claim, the defendant must show (1) counsel’s performance was deficient, and (2) the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). “The defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Id. at 694, 104 S.Ct. 2052. “With respect to the overall performance of the attorney, ‘counsel’s choice[s] of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy’ and cannot give rise to an ineffective assistance of counsel claim.” Powell v. State, 806 So.2d 1069, 1077 (¶ 18) (Miss.2001) (quoting Cole v. State, 666 So.2d 767, 777 (Miss.1995)).
¶ 35. “It is unusual for this Court to consider a claim of ineffective assistance of counsel when the claim is made on direct appeal.” Aguilar v. State, 847 So.2d 871, 878 (¶ 17) (Miss.Ct.App.2002).
This Court will rule on the merits on the rare occasions where “(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.”
Id. (quoting Colenburg v. State, 735 So.2d 1099, 1101 (¶ 5) (Miss.Ct.App.1999)). When an ineffective-assistance-of-counsel *113 claim cannot be supported on direct appeal, “the appropriate conclusion is to deny relief, preserving the defendant’s right to argue the same issue through a petition for post-conviction relief.” Id.(citing Read v. State, 430 So.2d 832, 837 (Miss.1983)). We do not find that the record before us is sufficient to support a finding of ineffective assistance of counsel. Uncertainty exists regarding whether the attorney’s performance prejudiced McDonald and whether the result would have been different had the attorney objected. The proper time to decide this issue would be when McDonald properly files a motion for post-conviction relief. Accordingly, we find this issue is without merit.
¶ 36. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF MARIJUANA WITH INTENT TO DISTRIBUTE AND SENTENCE AS A HABITUAL OFFENDER OF SIXTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
LEE, C.J., GRIFFIS, P.J., CARLTON, FAIR AND JAMES, JJ., CONCUR. IRVING, P.J., BARNES, ROBERTS AND MAXWELL, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).