# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00608-COA

**STANLEY WILSON A/K/A STANLEY L. WILSON A/K/A STANLEY LERNARD WILSON**                     **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                                       **APPELLEE**

DATE OF JUDGMENT:               05/19/2021
TRIAL JUDGE:                    HON. GERALD W. CHATHAM SR.
COURT FROM WHICH APPEALED:      DESOTO COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         OFFICE OF STATE PUBLIC DEFENDER
                                BY: ZAKIA HELEN ANNYCE BUTLER
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                BY: CASEY BONNER FARMER
DISTRICT ATTORNEY:              JOHN W. CHAMPION
NATURE OF THE CASE:             CRIMINAL - FELONY
DISPOSITION:                    AFFIRMED - 10/04/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     Following the denial of his motion to suppress evidence, Stanley Wilson was convicted of possession of oxycodone (trafficking) in violation of Mississippi Code Annotated section 41-29-139(f)(2)(C) (Supp. 2017). The DeSoto County Circuit Court sentenced Wilson as a habitual offender to serve ten years in the custody of the Mississippi Department of Corrections (MDOC) followed by five years of non-reporting post-release supervision. Wilson filed a motion for a new trial, which the trial judge denied.

¶2.     Wilson now appeals. On appeal, he argues that a police officer lacked reasonable

suspicion to initiate the traffic stop that led to Wilson's arrest, and therefore the trial judge erred in denying Wilson's motion to suppress the evidence obtained from the traffic stop.

¶3.     After our review, we find no error.  We accordingly affirm Wilson's conviction and sentence.

**FACTS**

¶4.     On April 10, 2018, Officer Ryan Darby of the Hernando Police Department initiated a traffic stop of a vehicle driven by Wilson.  Officer Darby testified that he initiated the stop for two reasons: he did not see a state-issued license tag displayed on the vehicle and he observed the driver of the vehicle acting in a suspicious manner.  During the traffic stop, Officer Darby learned that Wilson had outstanding warrants for his arrest.  Wilson consented to a search of the vehicle, and law enforcement officers discovered pill bottles containing oxycodone pills.

¶5.     Wilson was indicted as a recidivist and habitual offender for possession of oxycodone with intent to sell, involving forty dosage units or more (trafficking) (Count I), and possession of zolpidem with intent to sell, involving twenty dosage units or more (Count II). The State eventually agreed to remand Count II of the indictment and to reduce the charge in Count I to possession of oxycodone, involving forty dosage units or more (trafficking).

¶6.     Wilson filed a pretrial motion to suppress the evidence obtained from his vehicle following the traffic stop.  In the motion, Wilson argued that Officer Darby lacked reasonable suspicion to stop his vehicle, and therefore no probable cause existed for the eventual search

2

of Wilson's vehicle.

¶7. After a hearing, the trial judge denied the motion to suppress. Wilson then waived his right to a jury trial and proceeded with a bench trial. Wilson also filed a stipulation of facts and waived his right to call or cross-examine witnesses.

¶8. After reviewing the stipulation of facts and the evidence, the trial judge found Wilson guilty of possession of forty dosage units of more of oxycodone. The trial court sentenced Wilson as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2015) to serve ten years in the custody of the MDOC followed by five years of non-reporting post-release supervision.

¶9. Wilson filed a motion for a new trial, which the trial judge denied. Wilson now appeals his conviction and sentence.

## STANDARD OF REVIEW

¶10. We apply "a mixed standard of review to Fourth Amendment issues." *Casey v. State*, 302 So. 3d 617, 623 (¶16) (Miss. 2020). "Whether probable cause or reasonable suspicion exists is subject to a de novo review." *Id*. at 624 (¶16). "However, we review the trial judge's findings of historical fact only for clear error." *Wrenn v. State*, 281 So. 3d 838, 841 (¶12) (Miss. Ct. App. 2018) (internal quotation marks omitted).

¶11. "During a suppression hearing, the trial judge sits as a fact finder." *Walker v. State*, 913 So. 2d 198, 224 (¶87) (Miss. 2005). We will only reverse a trial judge's findings "for manifest error or if they are against the overwhelming weight of the evidence." *Id*. at 224-25

3

(¶87).

## DISCUSSION

¶12.   Wilson's sole argument on appeal is that the trial judge erred in denying his motion to suppress the evidence obtained from the traffic stop.  Wilson maintains that he had a valid license tag conspicuously displayed on his vehicle at the time of the traffic stop, and therefore Officer Darby lacked the requisite reasonable suspicion to initiate the traffic stop. Wilson asserts that because the traffic stop was improper, the trial judge should have excluded from evidence the alleged drugs that were found during the search of the vehicle, along with any oral statements, as "fruit of the poisonous tree."

¶13.   On appeal, we "must determine the lawfulness of the investigatory stop, as any evidence derived from an illegal search or seizure will be deemed tainted as 'fruit of the poisonous tree.'" *Cole v. State*, 242 So. 3d 31, 38 (¶14) (Miss. 2018) (quoting *United States v. Maberry*, 193 F. Supp. 3d 724, 731 (S.D. Miss. 2016)).  "[I]t is well-settled that 'police officers may detain a person for a brief, investigatory stop consistent with the Fourth Amendment when the officers have 'reasonable suspicion, grounded in specific and articulable facts,' which allows the officers to conclude the suspect is wanted in connection with criminal behavior.'" *Id*. at (¶15) (quoting *Eaddy v. State*, 63 So. 3d 1209, 1213 (¶14) (Miss. 2011)); *see also Terry v. Ohio*, 392 U.S. 1, 21 (1968).  "Vehicles also may be the subject of an investigative stop." *Haddox v. State*, 636 So. 2d 1229, 1234 (Miss. 1994).

¶14.   "Routine traffic stops are noncustodial investigatory stops, and we treat them as a

4

*Terry* stop." *McDonald v. State*, 130 So. 3d 102, 107 (¶11) (Miss. Ct. App. 2013) (footnote omitted) (citing *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004); *Terry*, 392 U.S. at 21). "When considering the legality of a *Terry* stop, appellate courts first examine whether the officer's action was justified at its inception, and then inquire whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *Id.* (internal quotation marks omitted). "Generally, there are two sources from which grounds for reasonable suspicion [for an investigatory traffic stop] may be established: 'either the officers' 'personal observation' or an informant's tip.'" *Cole*, 242 So. 3d at 38 (¶16) (quoting *Eaddy*, 63 So. 3d at 1213 (¶15)). The Mississippi Supreme Court has explained that "reasonable suspicion is based on something less than the personal observation of a violation of law. Reasonable suspicion is the standard for a stop or search based on suspicious activity that does not yet amount to criminal activity, but which compels an officer to believe that criminal activity has happened, is happening, or is about to happen." *Martin v. State*, 240 So. 3d 1047, 1051 (¶11) (Miss. 2017).

¶15. We now turn to review the evidence and testimony from the suppression hearing in the case before us. Officer Darby testified that on the afternoon of April 10, 2018, he was driving in his patrol car and encountered a dark-colored Audi that did not have a license tag visible on the back of the vehicle. Officer Darby testified that he followed the vehicle as it exited the interstate. During this time, Officer Darby observed that the driver of the vehicle "seemed to be turned around and he was doing something in the back seat as he was turned

around." Officer Darby also observed two car seats (for children) in the back of the vehicle.

¶16. Officer Darby testified that he continued to follow the vehicle down the exit ramp. Officer Darby observed the vehicle come to a stop at an intersection, and Officer Darby testified that the driver "continued to sit still approximately ten to fifteen seconds" while the traffic light was green. Officer Darby stated that this behavior appeared suspicious to him. Officer Darby explained that the driver of the vehicle knew that Officer Darby was behind him, and Officer Darby opined that "it's just not common behavior" to pull up to a green light and then not move your vehicle. Officer Darby stated that based upon the lack of a visible license tag displayed on the vehicle, as well as the driver's suspicious behavior, Officer Darby initiated a traffic stop.

¶17. Officer Darby testified that as he approached the stopped vehicle, he still did not see a license tag displayed on the back of the vehicle. Officer Darby also testified that before even speaking to the driver of the vehicle, he "instantly smelled marijuana." Officer Darby asked the driver for his driver's license, and Officer Darby identified Wilson as the driver of the vehicle. Wilson informed Officer Darby that he still had some unpaid fines. Officer Darby gave the law enforcement dispatch Wilson's information, and the dispatcher informed Officer Darby of local outstanding warrants for Wilson. Officer Darby testified that when he learned of the outstanding warrants for Wilson, he asked Wilson to exit the vehicle and informed Wilson of the warrants.

¶18. Officer Darby testified that he asked Wilson if he had smoked marijuana in the

6

vehicle, and Wilson answered that he had not. According to Officer Darby, Wilson informed him that he could search the vehicle and the trunk. Officer Darby stated that he could see a pill bottle containing pills in the padding of a child's car seat.

¶19. Photographs of Wilson's vehicle were entered into evidence, and the photographs show a paper drive-out license tag from a dealership visible on the back windshield of the vehicle. An enlarged photograph of the paper drive-out tag was also admitted into evidence. During his testimony, Officer Darby admitted the photographs of Wilson's vehicle entered into evidence show that a drive-out tag is visible on the back windshield of the vehicle. However, Officer Darby maintained that the tag was not visible when he stopped Wilson. Officer Darby testified that the traffic stop occurred shortly after noon, and he stated that it was possible that the sun's reflection on the back windshield may have obstructed his view of the tag at that time.

¶20. At the conclusion of Officer Darby's testimony, the trial judge heard arguments from the parties. The State argued that Officer Darby conducted a valid traffic stop. The State conceded that the photographs of the vehicle entered into evidence showed a drive-out tag displayed on the right side of the back windshield, but the State maintained that this is not the usual spot to display a drive-out tag. The State also reiterated that Officer Darby testified that he did not remember seeing a license tag on the vehicle and that the glare from the sun could have prevented him from seeing the tag. The State maintained that Officer Darby was within his rights to conduct a traffic stop to determine the validity of the drive-out tag.

7

Wilson's attorney argued that the photographs of Wilson's vehicle, however, show that the drive-out tag was clearly visible on the back windshield and that Officer Darby failed to articulate any specific facts that would give rise to reasonable suspicion to conduct a traffic stop.

¶21.    After hearing arguments, the trial judge found that Officer Darby's decision to stop Wilson was reasonable, and the judge accordingly denied Wilson's motion to suppress. The trial judge explained that Officer Darby testified "unequivocally" that while he was following Wilson's vehicle, he could not see a license tag, and no tag was in plain view. The trial judge held that "[t]his alone authorized the officer to stop the car, which we think was reasonable." The trial judge further found that Officer Darby testified that after he exited the patrol car and approached Wilson's vehicle, "he still did not see a tag." The trial judge acknowledged that the photographs of the vehicle entered into evidence "clearly show a drive-out tag." However, the trial judge stated that he did not know any details regarding when the photograph was taken.

¶22.    Mississippi Code Annotated section 27-19-323 (Rev. 2017) states that vehicles operated on Mississippi highways must have a tag that is "conspicuously displayed on the vehicle . . . in such manner that it may be easily read." Mississippi Code Annotated section 27-19-40 (Rev. 2017) regulates temporary tags like the dealership drive-out tag at issue in the present case. *See Wade v. State*, 33 So. 3d 498, 505 (¶25) (Miss. Ct. App. 2009). Section 27-19-40(2) requires that these tags be "properly displayed." Miss. Code Ann. § 27-19-

8

40(2).

¶23.	Wilson maintains that the drive-out tag on his vehicle was conspicuously displayed, and he therefore argues that Officer Darby lacked reasonable suspicion to initiate the traffic stop. In support of his argument, Wilson distinguishes the facts of his case from those of *Gonzales v. State*, 963 So. 2d 1138 (Miss. 2007), and Wilson asserts that he is entitled to a reversal of his conviction. In *Gonzales*, the defendants argued that because the license tag on their vehicle was in plain view, the highway patrol officer lacked reasonable suspicion to stop their vehicle for not having a tag. *Id*. at 1142 (¶15). During a hearing on the defendants' motion to suppress the evidence found in the vehicle as a result of the traffic stop, the officer "repeatedly stated that she pulled over the defendants' vehicle because it appeared not to have a tag." *Id*. at (¶16). The officer also testified that as she approached the driver, she did not see a tag on the vehicle at all. *Id*. Evidence produced at the suppression hearing showed that the vehicle's windows were tinted, which made the tag difficult to see or read. *Id*. at 1144 (¶24). The trial judge ultimately found that the officer "reasonably suspected the [vehicle] had no tag." *Id*. at 1143 (¶22). On appeal, this Court held that "[t]he record contains ample evidence to support that finding, and it will not be disturbed on appeal." *Id*. Wilson argues that unlike *Gonzales*, the evidence in the present case showed that the license tag on Wilson's vehicle was clearly and conspicuously displayed. As a result, Wilson claims that Officer Darby's assertion that he could not see the tag "was specious, at best."

¶24. Our review of the record reflects that Officer Darby indicated on the incident report that he stopped Wilson's vehicle because he did not see a license tag displayed on the vehicle. As stated, photographs of Wilson's vehicle were admitted into evidence that show a drive-out tag displayed on the rear windshield of the vehicle. Officer Darby acknowledged these photographs, but he maintained throughout the suppression hearing that the tag was not visible to him at any time while he was following Wilson's vehicle or during the traffic stop. Officer Darby suggested that because the traffic stop occurred shortly after noon, the glare from the sun may have obstructed his view of the license tag. Officer Darby also testified that he wrote on the incident report that Wilson was stopped at a green light for approximately ten seconds. Officer Darby explained that he found it suspicious that Wilson remained stopped at a green light for that long.

¶25. We have held that "[a]s a general rule, 'the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.'" *Henderson v. State*, 878 So. 2d 246, 247 (¶7) (Miss. Ct. App. 2004) (quoting *Whren v. United States*, 517 U.S. 806, 810 (1996)). The supreme court has clarified that

> *This is an objective test based on the facts known to the officer at the time of the stop, not on the motivations of the officer in making the stop.* On the other hand, if it is clear that what the police observed did not constitute a violation of the cited traffic law, there is no "objective basis" for the stop, and the stop is illegal.

*Moore v. State*, 986 So. 2d 928, 933 (¶14) (Miss. 2008) (quoting *Walker*, 913 So. 2d at 225-26 (¶91)). Our appellate courts have affirmed a trial judge's findings that a police officer had

10

reasonable suspicion to initiate a traffic stop in cases where the officer reasonably suspected the car had no license tag and also where the officer conducted the stop to investigate the validity of a car tag. *See Gonzales*, 963 So. 2d at 1144 (¶25); *Twenty Thousand Eight Hundred Dollars ($20,800.00) in U.S. Currency v. State ex rel. Miss. Bureau of Narcotics*, 115 So. 3d 137, 140 (¶15) (Miss. Ct. App. 2013) ("The facts that the claimants' tag was faded, partially covered, had an ambiguous expiration date, and had writing too small to read from the highway are sufficient to create reasonable suspicion warranting further investigation into its validity.").

## CONCLUSION

¶26. After our review, we find that Officer Darby had reasonable suspicion to initiate an investigatory stop of Wilson's vehicle. We accordingly find that the trial judge did not err in denying Wilson's motion to suppress. We therefore affirm Wilson's conviction and sentence.

¶27. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. WESTBROOKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD AND McCARTY, JJ.**

**WESTBROOKS, J., DISSENTING:**

¶28. I believe the trial judge's overruling of Wilson's motion to suppress was clear error and that this judgment should be reversed and rendered. Because I disagree with the majority's determination that Officer Ryan Darby's initial traffic stop of Stanley Wilson was

reasonable, I must respectfully dissent.

¶29. Officer Darby stopped Stanley Wilson after Officer Darby failed to see the valid temporary license tag affixed to Wilson's back windshield. At the trial, Officer Darby testified that he followed Wilson for approximately three-quarters of a mile on the interstate and down an exit ramp before initiating the traffic stop. He stated the weather was nice outside, and it was the middle of the day. There was no tint on the vehicle's windows, and Officer Darby testified that he could see into the interior of the car. In fact, he described seeing Wilson's movements inside the vehicle and the presence of two car seats in the back seat. At the same time, however, he testified that he was unable to perceive the temporary tag on the car in front of him.

¶30. Pictures of the car admitted into evidence show a temporary "drive-out" tag taped to the interior of the back windshield in the top right quadrant of the glass. These tags are used by automobile dealers after a car sale and are often valid for seven days. *See* Miss. Code Ann. § 27-19-40 (Rev. 2017). The tag was white, and the letters were large and dark, which provided a high contrast. The photograph was described by the State's attorney as being "from [Officer Darby's] agency." Officer Darby, upon viewing the photograph of the car, testified that it was a "true and accurate representation of the vehicle [he] saw that day" before the State entered the photo into evidence. Even so, in the trial judge's findings on the record, the judge stated, "I don't know when the picture was taken, but it does clearly show a drive-out tag in the picture. . . . I don't know the circumstances by which that [picture] was

12

made."

¶31. Officer Darby also noted that Wilson sat stationary at a green light for ten seconds, which Officer Darby thought "appear[ed] suspicious." According to Officer Darby, this behavior was illegal and constituted "obstructing traffic." Officer Darby could not recall any vehicles behind Wilson or in the intersection that were being obstructed. He also did not name the particular statute or ordinance that reflected the violation. Officer Darby, after reviewing his report, testified that he did not mention obstruction of traffic in his original report or testimony prior to the suppression hearing. He testified that the report he wrote stated "the reason for stopping [was that] I couldn't see your tag at all."

¶32. After the traffic stop, Wilson consented to a search of his vehicle, which led to the discovery of oxycodone pills. Wilson waived his right to a jury trial and his right to call and cross-examine witnesses. He subsequently was tried at a bench trial and convicted of possession of oxycodone, involving 40 dosage units or more (trafficking). He was sentenced as a habitual offender to ten years of incarceration followed by five years of post-release supervision. Wilson appeals from this judgment, arguing that the court should have granted his motion to suppress evidence from the traffic stop. He argues that because Officer Darby lacked reasonable suspicion for the stop, the stop was in violation of Wilson's constitutional rights, and the motion to suppress should have been granted.

A.     **Relevant Law**

¶33. Our Supreme Court developed the following test to determine whether a search and

13

seizure are reasonable:

> [T]he inquiry is two-fold: (1) whether the officer's action was justified at its inception, and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place. In order to satisfy the first prong, the law enforcement officer must be able to point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."

*Gonzales v. State*, 963 So. 2d 1138, 1142 (¶14) (Miss. 2007) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). In the present case, Wilson argues that the stop failed the first prong since it was not appropriately based on reasonable suspicion or probable cause.

¶34. Both the Fourth Amendment to the United States Constitution and the Mississippi Constitution provide "that all persons shall be secure 'in their persons, houses, papers, and effects, against unreasonable searches and seizures' and that 'no warrants shall issue, but upon probable cause.'" *Id. at* 1141 (¶11) (quoting U.S. Const., amend. IV); *accord* Miss. Const. art. III, § 23. However, "[b]oth this Court and the United States Supreme Court have recognized several exceptions to the Fourth Amendment's general proscription against warrantless searches," such as non-custodial investigatory *Terry* stops. *Id*. at (¶12). We treat routine traffic stops the same as non-custodial investigatory *Terry* stops. *McDonald v. State*, 130 So. 3d 102, 107 (¶11) (Miss. Ct. App. 2013) (citing *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004)).

### 1. Reasonable Suspicion

¶35. During a routine traffic stop, "[a]n officer may make a brief, investigatory stop of a vehicle if the officer has reasonable suspicion to believe that the occupants of the vehicle

14

have been, are currently, or are about to be involved in criminal activity." *Martin v. State*, 240 So. 3d 1047, 1050 (¶9) (Miss. 2017) (citing *United States v. Hensley*, 469 U.S. 221, 227 (1985); *Dies v. State*, 926 So. 2d 910, 918 (¶22) (Miss. 2006); *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 114 (¶16) (Miss. 1999)). "Reasonable suspicion is the standard for a stop or search based on suspicious activity that does not yet amount to criminal activity, but which compels an officer to believe that criminal activity has happened, is happening, or is about to happen." *Id.* at 1051 (¶11). Still, "[t]he suspicion must be 'grounded in specific and articulable facts.'" *Id.* at 1050 (¶9) (quoting *Eaddy v. State*, 63 So. 3d 1209, 1213 (¶14) (Miss. 2011) (citing *Walker v. State*, 881 So. 2d 820, 826 (¶10) (Miss. 2004); *Terry*, 392 U.S. at 21))). Our Supreme Court has emphasized that the facts must be judged against an objective standard. *Gonzalez*, 963 So. 2d at 1141 (¶13). We must ask, "Would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Id.* at 1141-42 (¶13) (quoting *Terry*, 392 U.S. at 21-22)).

2.    *Probable Cause*

¶36.    Probable cause requires a higher level of suspicion than reasonable suspicion. *Martin*, 240 So. 3d at 1051 (¶12) (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). Probable cause is not required for a *Terry* stop. *Id.* But when a defendant commits a traffic violation that is observed by an officer, probable cause to make a traffic stop exists. *Id.* (citing *Harrison v. State*, 800 So. 2d 1134, 1138 (¶18) (Miss. 2001)). "[T]he test for determining

15

probable cause is the totality of the circumstances." *Id*. at (¶13).

¶37. A traffic stop based on probable cause can be considered reasonable even if the officer makes a mistake of law. *Id*. at 1052 (¶15). But the probable cause still must be based on "good faith and a reasonable basis" to be valid. *Id*. (citing *Harrison*, 800 So. 2d at 1138-39 (¶19)). So if an officer observes a driver "commit what he reasonably believes is a traffic violation," there is probable cause to stop the vehicle. *Id*. at 1052 (¶16). But "[t]his is an objective test based on the facts known to the officer at the time of the stop. . . . [I]f it is clear that what the police observed did not constitute a violation of the cited traffic law, there is no 'objective basis' for the stop, and the stop is illegal." *Id*. at 1051-52 (¶14) (quoting *Moore v. State*, 986 So. 2d 928, 933 (¶14) (Miss. 2008)). To summarize, regardless of whether Officer Darby had reasonable suspicion *or* probable cause to pull over Wilson, his actions must be objectively reasonable.

¶38. In the present case, the explanations Officer Darby gave for the traffic stop were not objectively reasonable. The trial judge, on the record, found that Officer Darby "stated unequivocally that he could not see a tag and [there] was not a tag in plain view.[1] This alone

---

[1] The statute that requires a tag to be "in plain view" actually refers *only to vehicle dealers or automobile auctions* whose vehicles are temporarily in transit from one place of business to another:

> (1) A motor vehicle dealer or automobile auction may apply to the State Tax Commission for special in-transit tags or plates, which when properly displayed shall authorize the motor vehicle dealer or automobile auction to operate a motor vehicle upon the highways of this state without paying the annual highway privilege tax upon such vehicle and without attaching any

16

authorized the officer to stop the car, which we think was reasonable." The trial judge did not address the obstruction of traffic explanation. I believe the judge's finding here was clearly erroneous.

### B. "Conspicuously Displayed" Tag

¶39. The laws governing temporary tags in Mississippi require only that they be "properly displayed"[2] and "conspicuously displayed on the vehicle . . . in such manner that it may be

other license tag or plate to such vehicle, if:
> (a) The movement of the motor vehicle is for the purpose of sale of such vehicle to another motor vehicle dealer or automobile auction;
> (b) The motor vehicle is being moved from the place of business of one motor vehicle dealer or automobile auction to the place of business of another motor vehicle dealer or automobile auction; and
> (c) The special in-transit tag or plate is displayed in plain view on the motor vehicle in the manner prescribed by the State Tax Commission.

Miss. Code Ann. § 27-19-40(1).

[2] The pertinent portion of Mississippi Code Annotated section 27-19-40(2) regarding in-transit and temporary tags states:

> (2) A motor vehicle dealer or automobile auction may apply for a temporary tag or plate to be used when a motor vehicle in this state is sold by the motor vehicle dealer or automobile auction to a nonresident of the State of Mississippi or when a motor vehicle is sold by a motor vehicle dealer or automobile auction to a Mississippi resident who may temporarily exit this state before obtaining a Mississippi tag or plate. Such tag or plate when properly displayed shall authorize the purchaser of such a motor vehicle to operate the motor vehicle upon the highways of this state. The temporary tag or plate shall be valid for a period of seven (7) full working days, exclusive of the date of purchase, after the date the motor vehicle is purchased; however, if the temporary tag or plate is issued to a nonresident of the State of Mississippi, the temporary tag or plate shall be valid for the number of days within which the nonresident is required to obtain a permanent motor vehicle license tag or plate by the laws of the nonresident's state of residence.

17

easily read."[3] Miss. Code Ann. §§ 27-19-40,-323. In *Gonzales*, a similar case to the case at bar, a traffic stop was deemed proper when the tag was not displayed in a manner in which it could easily be read. *Gonzales*, 963 So. 2d at 1144 (¶¶24, 29). Evidence was produced that indicated the very dark tint on Gonzalez's windows made the tag difficult to see. *Id*. at 1142 (¶16). The officer testified that she pulled Gonzalez over in the evening, and did not see the tag until she shined her flashlight on it. *Id*. at 1139 (¶3), 1140 n.3. Photographs of the car taken at the time of the traffic stop show that the tag was illegible to the officer. *Id*. at 1142 (¶17). In that case it was considered "reasonable" for the officer to pull over Gonzales, because the tag was not "conspicuously displayed"—which constituted a violation of section 27-19-323. *Id*. at 1143 (¶23).

¶40. In *Wade v. State*, 33 So. 3d 498 (Miss. Ct. App. 2009), the officer was found to have reasonable suspicion to stop a vehicle that had a temporary tag when the deputy was unable to see the license plate taped to the interior window of a rental car. *Id*. at 505 (¶24). In that case the tag was not visible due to the heavy tint and "a significant amount of dirt and dust." *Id*. Photographs again confirmed the lack of visibility through the rear window, even though this stop occurred in the daylight. *Id*.

¶41. In the present case, testimony establishes that the stop occurred in the middle of the

---

[3] Regarding the displaying of dealer tags, our laws state, "No vehicle bearing a distinguishing number tag shall be operated upon the highways of this state unless such tag is conspicuously displayed on the vehicle being operated in such manner that it may be easily read. Such tags shall be kept reasonably clean and shall not be defaced in any manner." Miss. Code Ann. § 27-19-323.

day. The photographs taken by Officer Darby's agency and admitted by the State into evidence show a clear, clean rear window with an obvious tag affixed to the interior glass. The numbers are large and legible. The tag was conspicuously displayed and was reasonably clean as our statutes required. *See* Miss. Code Ann. §§ 27-19-40(2), -323. Although the trial judge cast doubt on these photos by stating, "I don't know when the picture was taken[, and] . . . I don't know the circumstances by which that was made," testimony by Officer Darby established that these pictures were an "accurate representation of the vehicle that [he] saw that day." Here, unlike in *Gonzales* and *Wade*, the photographs and supporting evidence show that Wilson did not violate the statute.

¶42. Officer Darby, who followed Wilson for approximately a mile, surmised that the glare of the sun may have obscured his view of the tag. But this is not reasonable. Officer Darby followed Wilson on the interstate and then as he exited the interstate and turned right at the intersection at the base of the exit. It strains credibility to believe that the sun would have continued to cause a consistent glare as Wilson exited and turned, changing directions and streets. Furthermore, if a glare was present on the rear window of the car, it is inexplicable that Officer Darby was able to see into the vehicle and describe Wilson's actions, movements, and the presence of car seats. If a glare obscured the tag, it should have obscured the rest of the view as well. The objective test from *Gonzalez* requires us to ask, "[W]ould the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Gonzalez*,

19

963 So. 2d at 1141-42 (¶13). Here, the answer is clearly no.

### C. Obstructing Traffic

¶43. Officer Darby also testified that because Wilson sat at the green light at the end of the exit ramp for ten seconds, he was "obstructing traffic," and this was an additional explanation for the traffic stop. But Officer Darby could not recall any traffic nearby that Wilson was obstructing. The State, on appeal, argues that Officer Darby had probable cause to stop Wilson based on this purported obstruction of traffic. Neither the State nor Officer Darby elaborates on the particular statute or ordinance Wilson was in violation of, and the citation was not documented in Officer Darby's report. However, a review of our statutes shows that it is "unlawful for any person or persons to wilfully obstruct the free, convenient and normal use of any. . . street, highway, alley, road, or other passageway by impeding, hindering, stifling, retarding or restraining traffic or passage thereon." Miss. Code Ann. § 97-35-25 (Rev. 2014). Additionally, it is "unlawful for any person or persons to intentionally obstruct, or interfere with the normal or ordinary free use and passage of vehicles of or on, any public street or highway." Miss. Code Ann. § 97-35-23 (Rev. 2014). But here the record is devoid of any evidence that Wilson interfered with or impeded traffic or the normal use of vehicles on the streets. Officer Darby was unable to testify to the presence of any traffic that was being obstructed.

¶44. It is true that "a traffic stop can even be reasonable . . . [i]f the probable cause is based on a mistake of law." *Martin*, 240 So. 3d at 1052 (¶15). But the police officer must observe

20

"a driver commit what he *reasonably believes* is a traffic violation." *Id*. at (¶16) (emphasis added). If it is clear what he observed did not violate the cited traffic law, "there is no objective basis for the stop, and the stop is illegal." *Id*. at (¶14). Here, it is clear that what Officer Darby observed did not constitute a violation of the obstruction of traffic laws, as there is no evidence that traffic was obstructed. The officer could not reasonably believe that Wilson committed this traffic violation. Ultimately, because neither of Officer Darby's explanations for the traffic stop was reasonable, I believe the trial judge's overruling of Wilson's motion to suppress was in clear error.

¶45. In the present case, Wilson conspicuously displayed his tag in such a way that it could be easily and clearly read (i.e., in line with the statutes). An objective view of the facts shows that it would not be reasonable for an officer at that moment to believe that the action was appropriate. Furthermore, Officer Darby could not have reasonably believed that Wilson committed obstruction of traffic when there was no traffic to obstruct. Because Officer Darby cannot support the traffic stop with either reasonable suspicion or probable cause, as is constitutionally required, and because his explanations for the stop are not reasonable, the traffic stop should be considered an illegal violation of Wilson's constitutional rights. I would reverse and render the judgment in this case. Because of this, I respectfully dissent from the majority's opinion.

**McDONALD AND McCARTY, JJ., JOIN THIS OPINION.**